IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW DAVENPORT,<br><br>  Plaintiff,<br><br>  v.<br><br>DE NOVO DIAGNOSTICS, INC. and DAVID PERRY,<br><br>  Defendants, | **CIVIL ACTION NO.:**<br><br><br>**COMPLAINT** |

Plaintiff, Andrew Davenport ("Plaintiff"), brings this action against Defendants, De Novo Diagnostics, Inc. ("De Novo") and David Perry ("Defendant Perry") (De Novo and Defendant Perry are, collectively, the "Defendants") and in support thereof, aver as follows:

**PARTIES**

1.    Plaintiff is an individual and resident of the Commonwealth of Pennsylvania.

2.    De Novo is a corporation organized and operating under the laws of the State of Nevada which, at all relevant times, conducted a continuous and systematic part of its general business in the State of Nevada.

3.    Defendant Perry is an individual and resident of New Jersey.

**JURISDICTION AND VENUE**

4.    Pursuant to 28 U.S.C. § 1332(c), Plaintiff is a citizen of the Commonwealth of Pennsylvania.

5.    Pursuant to 28 U.S.C. § 1332(c), De Novo is a citizen of the State of Nevada

6.    Pursuant to 28 U.S.C. § 1332(c), Defendant Perry is citizen of the State of New Jersey.

7.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as complete diversity in citizenship exists between plaintiff on one hand and defendants on the other hand (plaintiff

being a citizen of Pennsylvania and Defendants all being citizens of other jurisdictions) and the amount in controversy exceeds $75,000.

8.      Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391, as the events and/or omissions giving rise to Plaintiff's claims occurred in Pennsylvania.

## FACTS

9.      Defendant Perry is a Harvard-trained, nationally-recognized thought leader and entrepreneur in the technology space.

10.     Plaintiff was approached by a business acquaintance with regard to De Novo, a technology company partially owned by Defendant Perry, specifically with regard to an infusion of capital to fund De Novo's operations.

11.     Following negotiation, Plaintiff lent $500,000.00 to De Novo pursuant to the terms of the "Senior Secured Convertible Promissory Note" dated April 11, 2016 ("Note"), which, in relevant part, obligated De Novo to repay Plaintiff the unpaid principal amount of $500,000.00 plus interest at an annual rate equal to 14% per year on October 11, 2016 (the "Maturity Date").

12.     The Promissory Note provided, in relevant part, that:

(a) The outstanding principal amount of this Note, together with all accrued an unpaid Interest (as defined below) (unless otherwise capitalized in accordance with section 1(b) below), shall be due and payable in cash on October 11, 2016 (the "Maturity Date") subject to acceleration as permitted hereunder and further subject to the conversion provisions set forth in Section 5 below. The company promises to pay interest on the unpaid and outstanding principal balance (the "Principal Amount") of this Note ("Interest") from the date advanced until such Principal Amount is paid in full at an annual rate equal to fourteen percent (14%) per annum (the "Interest Rate"). Interest shall not be compounded. Interest from the date of each Advance shall be computed on the daily basis of a 360-day year of twelve 30-day months. The outstanding Principal Amount, together with accrued and unpaid Interest and any other amounts due hereunder, shall be collectively referred to as the "Obligations."

(b) Notwithstanding the foregoing, in lieu of paying in cash the Interest accrued as of the Maturity Date, the Holder shall have the option, exercisable in its sole discretion but with notice of such exercise being provided to the Company, to capitalize any accrued but unpaid Interest and add such Interest as of the maturity Date to the outstanding principal amount of this Note (the "PIK Amount"). Such PIK Amount, if any, shall bear Interest from the maturity Date at the same rate per annum and be payable in the same manner as in the case of the original principal amount of the Note and shall otherwise be treated as principal of the Note for all purposes. From and after the

Maturity Date, the principal amount of the Note shall, without further action on the part of the Company or the Holder, be deemed to be increased by any PIK Amount so capitalized and added to principal in accordance with the provisions hereof.

13. De Novo did not pay interest accrued as of the Maturity Date and, accordingly, Plaintiff elected to have the outstanding interest as of that date added to the principal amount of the Note on April 11, 2017.

14. At the same time Plaintiff executed the Note, he also executed the Security Agreement dated April 11, 2016 ("Security Agreement") pursuant to which De Novo's obligations under the Note were secured by De Novo's contract rights, general intangibles, documents, instruments, chattel paper, intellectual property, equipment, fixtures, inventory, insurance policies and bank accounts, among other things. (the "Collateral").

15. In addition, the Security Agreement set forth various representations, warranties and covenants which obligated De Novo to defend the Collateral and, among other things, "promptly notify [Plaintiff] in writing of any information that the Company has or may receive with respect to the Collateral that might in any manner materially and adversely affect the value thereof or the rights of [Plaintiff] with respect thereto."

16. The covenants were in aid of Plaintiff's rights to resort to the Collateral and to take possession of them or auction them in aid of his rights to payment under the Note.

17. The Security Agreement also obligated De Novo to advise Plaintiff of " (i) the cessation of operations of any one or more of the businesses operated by the Company in a manner that materially adversely affects the financial results, condition or assets of the Company, taken as a whole; or (j) if David Perry or Joseph Carmichael shall no longer be involved in the operations of the business of the Company."

18. In sum, De Novo and Defendant Perry were obligated to inform Plaintiff of any conditions which would render De Novo unable or unlikely to pay Plaintiff sums due under the Note.

19. Between April 11, 2017 and November 2021, Plaintiff had repeated contact directly with Defendant Perry with regard to repayment under the Note. Each time, Defendant Perry reassured Plaintiff that De Novo was "close to a deal" that would result in the Note being paid in full.

20.     During this period, Defendant Perry provided advice to Plaintiff regarding recoupment of his investment and specifically advised him to refrain from taking legal action to enforce his rights.

21.     Based on Defendant Perry's relationship as an officer of De Novo, in combination with his sizable influence within De Novo to determine whether Plaintiff would receive his investment back, in contrast to Plaintiff's position as an outsider of De Novo, Plaintiff relied on Defendant Perry to provide him with accurate information.

22.     Plaintiff believed Defendant Perry's representations and trusted him.

23.     In November 2020, Defendant Perry stopped returning Plaintiff's calls regarding the Note.

24.     At that time, Plaintiff discovered that De Novo had its corporate registration revoked in 2017, that Defendant Perry had ceased working for De Novo and had become CEO of Indigo Ag, a separate technology startup, and that De Novo was not conducting any business activity whatsoever, all of which are "Events of Default" under the Security Agreement and all of which Defendant Perry had hidden from Plaintiff over the course of nearly four years.

25.     Pursuant to Article 6 of the Security Agreement, by correspondence dated February 1, 2021, Plaintiff caused to be sent notice of the Event of Default to Joshua Brinen, Esq., counsel designated on the Security Agreement to receive notice, along with an election of remedies pertaining to "Collateral," as defined by the Note, to secure Plaintiff's interest.

26.     Shockingly, Mr. Brinen advised that he had no way of contracting De Novo or Defendant Perry and had not heard from anyone at De Novo since August 1, 2016.

27.     All these acts and omissions constitute both "Events of Default" under the Promissory Note and Security Agreement as well as violation of the "Covenants" of the Note which obligated De Novo to advise Mr. Davenport of events which would impact his enforcement rights relative to De Novo's obligations.

28.     To-date, despite demand made along with satisfaction of all conditions precedent relevant to the Note and the Security Agreement, De Novo has refused and continues to refuse to pay its

"Obligations" as defined by the Promissory Note. That failure to pay constitutes an "Event of Default" as defined by the Promissory Note.

## COUNT I
### (Breach of Written Contract – Plaintiff v. De Novo)

29.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of the complaint as if forth herein at length.

30.     The Note and Security Agreement govern the relationship between Plaintiff and De Novo.

31.     The Note requires De Novo to pay Plaintiff all amounts due and owing under the Note.

32.     The Security Agreement requires De Novo to advise Plaintiff, in writing, of any "Events of Default," as defined by the Security Agreement.

33.     De Novo has both failed to perform its payment obligations under the Note and its collateral obligations under the Security Agreement, as set forth at length above, all of which constitute breaches of the Note and Security Agreement.

34.     As of the time of the filing of the within complaint, De Novo's payment obligations under the Note are $906,173.40 as of September 13, 2021 with interest accruing at a rate of $205.24 per day.

35.     Finally, the Note requires De Novo to pay Plaintiff's attorneys' fees and costs in connection with this dispute.

**WHEREFORE**, Plaintiff respectfully requests that this honorable court enter judgment in his favor and against De Novo in an amount exceeding $75,000 plus consequential and incidental damages, interest, attorneys' fees, costs of suit and such other relief that this court deems just and proper.

## COUNT II
### (Breach of Fiduciary Duty – Plaintiff v. Defendant Perry)

36.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of the complaint as if forth herein at length.

37.     Defendant Perry, in bad faith, has knowingly, willfully, and recklessly violated fiduciary duties of good faith, loyalty, and due care owed to Plaintiff and has put his own interests ahead of the

interests of Plaintiff, to whom he owed a duty, as set forth above, due to the confidential relationship with Defendant Perry fostered to lull Plaintiff into inaction.

38.     As set forth above, Defendant Perry breached its fiduciary duty of care by among other things, placing De Novo's interest in stealing Plaintiff's investment over Plaintiff's interest in recouping it.

39.     Plaintiff has been damaged by Defendant Perry's breach of his fiduciary duties by losing the opportunity to act to protect his investment by resort to the Collateral, among other things.

**WHEREFORE**, Plaintiff respectfully requests that this honorable court enter judgment in his favor and against Defendant Perry in an amount exceeding $75,000 plus consequential and incidental damages, interest, attorneys' fees, punitive damages, costs of suit and such other relief that this court deems just and proper.

## COUNT III
### (Fraud – Plaintiff v. Defendant Perry)

40.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of the complaint as if forth herein at length.

41.     As set forth above, Defendant Perry made material misrepresentations and omissions to Plaintiff of presently existing or past facts including, *inter alia*, De Novo's business operations and his involvement in them.

42.     Defendant Perry knew that said misrepresentations and omissions were false but intended that Plaintiff rely on them and that Defendant Perry obtain an undue advantage therefrom.

43.     Indeed, based on his fiduciary relationship with Plaintiff, Defendant Perry had an obligation to disclose the true status of De Novo's business operations and ability to pay Plaintiff back his investment.

44.     Defendant Perry's incomplete disclosure resulted in misleading half-truths, where material facts related to De Novo's continued operation and ability to pay, facts which were material to Plaintiff's decision whether to pursue legal recourse, were not disclosed to Plaintiff.

45.     Plaintiff relied on said misrepresentations and omissions to his detriment.

46.     As a direct and proximate result, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully requests that this honorable court enter judgment in his favor and against Defendant Perry in an amount exceeding $75,000 plus consequential and incidental damages, interest, attorneys' fees, punitive damages, costs of suit and such other relief that this court deems just and proper.

Respectfully submitted,

Noah A. Schwartz (PA ID: 307835)
**FERRARA LAW GROUP, P.C.**
1 Holtec Drive, Suite G102
Marlton, New Jersey 08053
Telephone: (609) 571-3738
Fax:        (609) 498-7440
Noah@ferraralawgp.com

*Attorneys for Plaintiff, Andrew Davenport*

Dated: September 13, 2021